O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**MARIA CASTRO DE JESUS,**          )   NO. EDCV 10-01522-MAN
                                    )
            **Plaintiff,**        )
                                    )   MEMORANDUM OPINION
      v.                            )
                                    )   AND ORDER
**MICHAEL J. ASTRUE,**              )
**Commissioner of Social Security,** )
                                    )
            **Defendant.**        )
_____)

      Plaintiff filed a Complaint on October 14, 2010, seeking review of the denial by the Social Security Commissioner (the "Commissioner") of plaintiff's application for supplemental security income ("SSI"). On October 28, 2010, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on June 17, 2011, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and defendant requests that the Commissioner's decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken the parties'

Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On November 20, 2008, plaintiff filed an application for SSI.[1] (Administrative Record ("A.R.") 14, 16.) Plaintiff, who was born on January 28, 1958,[2] claims to have been disabled since May 17, 2003, due to depression, bipolar disorder, and arthritis in her shoulders and joints. (A.R. 14-19, 171, 199.) Plaintiff has no past relevant work experience. (A.R. 22.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 14, 64-68, 74-78), plaintiff requested a hearing (A.R. 80-82). On March 9, 2010, plaintiff, who was represented by counsel, appeared and testified, with the help of a Spanish interpreter, at a hearing before Administrative Law Judge David M. Ganly (the "ALJ"). (A.R. 24-46.) Vocational expert Sandra M. Fioretti and medical experts Samuel Landau, M.D., a specialist in internal medicine, and David

---

[1] In his decision, the ALJ noted that plaintiff "filed a prior application for [SSI] on March 8, 2005. Subsequently, a hearing was held and a decision was issued by an Administrative Law Judge on or about March 29, 2007, denying [plaintiff] benefits." (A.R. 14.) While that final decision created a presumption of continuing non-disability (A.R. 14, 21), the ALJ found that plaintiff overcame the presumption by "provid[ing] persuasive evidence of significant 'changed circumstances'" (A.R. 21).

[2] On the date the application for SSI was filed, plaintiff was 50 years old, which is defined as an individual "closely approaching advanced age." (A.R. 22 (*citing* 20 C.F.R. § 416.963).)

2

Glassmire, Ph.D., a psychologist, also testified.[3] (*Id.*) On May 19, 2010, the ALJ denied plaintiff's claim (A.R. 14-23), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-5). That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff has not engaged in substantial gainful activity since November 20, 2008, her application date. (A.R. 16.) The ALJ determined that plaintiff has the following severe impairments: "mood disorder, not otherwise specified; and a psychotic disorder, not otherwise specified." (*Id.*) The ALJ also determined that plaintiff does not have any severe physical impairment. (A.R. 16-17.) The ALJ further determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (A.R. 17.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [plaintiff] is able to perform simple repetitive tasks and do work that is object

---

[3] There are discrepancies in the record with respect to the spelling of the names of the vocational and medical experts. (*Compare* A.R. 14, *with* A.R. 24-46.) For purposes of this memorandum opinion and order, the Court has adopted the spelling used by the ALJ in his decision.

3

oriented with no interaction with the general public and only
non-intense interactions with co-workers and supervisors;
[plaintiff] cannot do work that requires hypervigilance.

(A.R. 18.)

The ALJ found that plaintiff "is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English." (A.R. 22.) The ALJ also found that "[t]ransferability of job skills is not an issue because [plaintiff] does not have past relevant work [experience]." (*Id.*)

Having considered plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff could perform, including those of kitchen helper, industrial cleaner, and bench assembler. (A.R. 22-23.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since November 20, 2008, the date the application was filed. (A.R. 23.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d

5

at 679.

**DISCUSSION**

Plaintiff asserts the following claims: (1) the ALJ failed to meet his burden at step five in determining that plaintiff is capable of performing the jobs of kitchen helper, industrial cleaner, and bench assembler; and (2) the ALJ posed an incomplete hypothetical to the vocational expert.[4] (Joint Stipulation ("Joint Stip.") at 1-11.) As plaintiff's claims are interrelated, the Court will address them together.

**I. The ALJ Did Not Meet His Burden At Step Five, Because He Improperly Relied Upon The Testimony Of The Vocational Expert In Response To An Incomplete Hypothetical Question That Did Not Include Plaintiff's Language Limitations.**

At step five of the sequential evaluation, the burden shifts from the claimant to the ALJ to prove that, based on the claimant's RFC, age, education, and past work experience, the claimant is able to perform work that exists in significant numbers in the national economy. Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996); 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c), 416.964. Pursuant to the regulations, a claimant's educational level refers to, *inter alia*, "formal schooling or other training which contributes to [a claimant's] ability to meet

---

[4] In the Joint Stipulation, plaintiff states that the contentions section for the second claim was inadvertently left blank. However, plaintiff contends, and the Court agrees, that plaintiff subsumed her second claim within her first claim.

6

vocational requirements," and "how well [a claimant is] able to communicate in English since this ability is often acquired or improved by education." 20 C.F.R. § 416.964. In evaluating a claimant's educational level, the Commissioner uses categories that include, *inter alia*, "[i]lliteracy" and "[i]nability to communicate in English." *Id.* The category of illiteracy is defined as "the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 416.964(b)(1). With respect to the category of "[i]nability to communicate in English," the regulations provide that, "[b]ecause English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job . . . . Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do." 20 C.F.R. § 416.964(b)(5).

The ALJ can meet his burden at step five by either taking the testimony of a vocational expert or by referring to the Grids. *See* Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006); *see also* Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999)(describing how the vocational expert's testimony and the Grids are used at step five). If the ALJ chooses, as in this case, to rely upon the testimony of a vocational expert, the hypothetical posed to the vocational expert must be "accurate, detailed, and supported by the medical record." *Id.* If the hypothetical presented to the vocational expert does not reflect all of the claimant's limitations and/or is not supported by evidence in the

record, the "[vocational] expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993)(citation and internal quotations omitted); Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). To ensure the validity of the vocational expert's hypothetical, the ALJ should base it upon evidence appearing in the record, whether disputed or not. *Id.*

At the administrative hearing, the ALJ elicited the following testimony from the vocational expert:

> Q . . . Okay. I'm going to give you one or more hypotheticals . . . . For each of these we'd like you to consider a lady of the same age, education and prior work experience as [plaintiff]. For the first hypothetical I'd like you to assume that there are no physical impairments, and accordingly no physical limitations. For psychological limitations I'd like you to assume that the individual could perform simple repetitive tasks that were object oriented. She should not have any interaction with the general public, and should not have any intense interaction with either coworkers or supervisors. Additionally she should not be required to exercise any hypervigilance on the job. Okay, given those limitations, would she be able to perform any of -- well forget that. She didn't have any prior relevant work. Would she be able to -- would there be some jobs she would be able to perform?

|   |   |
|---|---|
| 1 | A   There would be work as a kitchen helper, <u>DOT</u> code 318.687- |
| 2 | 010.  That work is medium, unskilled, SVP:2.  Regionally there |
| 3 | are 5,000 positions.  Nationally in excess of 100,000 |
| 4 | positions.  There would be work as an industrial cleaner, <u>DOT</u> |
| 5 | code 381.687-018.  That work is medium, unskilled, SVP:2. |
| 6 | Regionally there are 2,000 positions.  Nationally there are |
| 7 | 30,000 positions.  There would be a variety of assembly |
| 8 | positions.  An example in that category would be bench |
| 9 | assembler, <u>DOT</u> code 706.684-042.  That work is light, |
| 10 | unskilled, SVP:2.  Regionally there are 2,500 positions. |
| 11 | Nationally in excess of 35,000 positions. |

. . . .

Q  . . . Are these jobs that you've given us all consistent with the <u>Dictionary of Occupational Titles</u>?

A   Yes, they would be.

(A.R. 42-43.)

Based upon the above testimony of the vocational expert as well as the ALJ's consideration of plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff could perform. (A.R. 22-23.) The ALJ specifically cited the jobs of kitchen helper, industrial cleaner, and bench assembler as examples of such jobs. (*Id.*)

However, as plaintiff properly contends, the ALJ failed to include in his hypothetical to the vocational expert the ALJ's finding that plaintiff "is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English." (A.R. 22.) The ALJ's failure to include plaintiff's inability to communicate in English in his hypothetical to the vocational expert is not without consequence. As an initial matter, the three jobs cited by the vocational expert and adopted by the ALJ in his step five determination require either a Language Level of 1 or 2 -- language levels that appear to be inconsistent with plaintiff's inability to communicate and illiteracy in English.[5] Moreover, and significantly, because the

---

[5] The DOT indicates that the job of kitchen helper requires a Langauge Level of 1. A Level 1 Language Level requires the following reading, writing, and speaking skills:

> READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
>
> SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

See, e.g., DOT No. 318.687-010, 1991 WL 672755 (1991)(kitchen helper).

The DOT indicates that the jobs of industrial cleaner and bench assembler require a Language Level of 2. A Level 2 Language Level requires the following reading, writing, and speaking skills:

> READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end pronunciation, and employing adjectives and adverbs.

hypothetical posed to the vocational expert did not reflect all of plaintiff's limitations, the vocational expert's testimony has no evidentiary value with respect to plaintiff's ability to perform other work in the national economy.

Accordingly, because the ALJ relied upon the testimony given by the vocational expert in response to an incomplete hypothetical -- *i.e.*, a hypothetical that did not include plaintiff's inability to communicate and illiteracy in English -- the Court cannot find the ALJ's step five determination -- that plaintiff can perform work available in the national economy -- to be supported by substantial evidence. Therefore, the matter must be remanded to the ALJ to determine whether jobs exist in significant numbers in the national economy that plaintiff could perform, even with her inability to communicate and illiteracy in English.[6]

---

> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

*See, e.g.,* DOT No. 381.687-018, 1991 WL 673258 (1991)(industrial cleaner); DOT No. 706.684-042, 1991 WL 679055 (1991)(bench assembler).

[6] Defendant contends that the ALJ did not commit error at step five because: (1) the vocational expert was aware of plaintiff's limited English ability; (2) under the Grids, plaintiff's inability to communicate in English would have "little effect on her ability to work"; and (3) "there is significant evidence that [plaintiff] has more than minimal English ability." (Joint Stip. at 6-8.) Defendant's first ground is unpersuasive, because, while the vocational expert may have been aware of plaintiff's inability to communicate in English, the ALJ's hypothetical to the vocational expert did not include any language limitations, and there is no indication that the vocational expert took into account such limitations when determining that plaintiff could perform jobs in the national economy. The ALJ's second ground is equally unavailing, because when, as in this case, "a claimant suffers only non-exertional limitations, the [G]rids are inappropriate." Lounsbury, 468 F.3d at 1115. Accordingly, defendant's reference to the Grids is unpersuasive. Defendant's third reason is also unpersuasive,

**II. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record). On remand, the

---

because the ALJ specifically found that plaintiff "is unable to communicate in English," and there is no evidence that plaintiff's limited English abilities rise to the language levels required by the jobs identified by the ALJ as those plaintiff could perform. Moreover, the Court cannot entertain post hoc rationalizations. *See, e.g.,* Orn, 495 F.3d at 630 (noting that a court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely"); Connett, 340 F.3d at 874 (stating "[w]e are constrained to review the reasons the ALJ asserts" and "[i]t was error for the district court to affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss").

12

ALJ must correct the above-mentioned deficiencies and errors. Specifically, the ALJ must pose a complete hypothetical to a vocational expert, which includes, among other things, plaintiff's English language limitations, to determine what work, if any, plaintiff can perform.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 26, 2011

/s/ Margaret A. Nagle
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

13